IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEREK A. HEYLIGER,

          Plaintiff,          Civil Action No.
  v.                              3:11-CV-1293 (NAM/DEP)

J.D. COLLINS, Sergeant; *et. al.*,

          Defendants.

_____

APPEARANCES:

FOR PLAINTIFF:

DEREK A HEYLIGER, *Pro Se*
12-B-0269
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

FOR CITY OF BINGHAMTON
DEFENDANTS:

LEONARD & CUMMINGS, LLP         PATRICIA A. CUMMINGS, ESQ.
84 Court Street
Suite 402
Binghamton, NY 13901

HON. KENNETH J. FRANK            BRIAN M. SEACHRIST, ESQ.
City of Binghamton Corp. Counsel    First Ass't Corporation Counsel
City Hall
38 Hawley Street
Binghamton, NY 13901

FOR COUNTY OF BROOME
DEFENDANTS:

HON. ROBERT G. BEHNKEROBERT G. BEHNKE, ESQ.
Broome County AttorneyJENNIFER LAUREN KATZ, ESQ.
Crawford County Office BuildingLEIA D. SCHMIDT, ESQ.
P.O. Box 1766
Binghamton, NY 13902

FOR REMAINING DEFENDANTS:

HON. ERIC T. SCHNEIDERMANKRISTEN M. QUARESIMO, ESQ.
New York State Attorney GeneralAssistant Attorney General
The Capitol
Albany, NY 12224

COSTELLO, COONEY PLLCPAUL G. FERRARA, ESQ.
500 Plum Street, Suite 300NICOLE M. MARLOW-JONES, ESQ.
Syracuse, NY 13204

JACKSON BERGMAN LLPTHOMAS D. JACKSON, ESQ.
249 Robinson Street
Binghamton, NY 13904

BOND, SCHOENECK & KINGJONATHAN B. FELLOWS, ESQ.
One Lincoln Center
Syracuse, NY 13202


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

*Pro se* plaintiff Derek A. Heyliger, who is currently a New York State prison inmate, has commenced this action asserting various constitutional and state common law claims against dozens of defendants. Plaintiff's

2

claims arise principally out of his arrest by City of Binghamton police officers on September 12, 2010, and an ensuing criminal prosecution.

Currently pending before the court in connection with this action is a motion brought by the plaintiff to disqualify the law firm of Jackson Bergman LLP from representing several of the defendants named in the complaint, as amended. For the reasons set forth below, that motion is granted.

I. BACKGROUND

Plaintiff commenced this action on December 1, 2011. Dkt. No. 1. His original complaint was comprised of twenty-eight pages, containing 115 separately numbered paragraphs, and asserted claims against forty-two defendants, including individuals employed by various law enforcement agencies and several entities such as the New York State Police Department, the New York State Department of Corrections and Community Supervision, the City of Binghamton Police Department, and the Broome County Sheriff's Department. *See generally id.* Among the individual defendants named were Broome County District Attorney Gerald Mollen and two Assistant Broome County District Attorneys, including Thomas Jackson, Esq. By order issued on December 13, 2011, the court, *inter alia*, dismissed plaintiff's claims against District Attorney Mollen and Assistant District Attorney Jackson.

Plaintiff's proposed first amended complaint ( "FAC") was subsequently received by the court on January 13, 2012.[1] Dkt. No. 8. That proposed pleading consisted of sixty-seven pages, with 102 separately numbered paragraphs, and named twenty-five defendants – some of whom were previously dismissed from the action with prejudice. *Id.*

On December 28, 2012, plaintiff moved for leave to file a second amended complaint ("SAC") in the action, consisting of 192 handwritten pages, with 545 separately numbered paragraphs. Dkt. No. 73. Leave to amend was granted on September 25, 2013, and plaintiff's SAC was accepted for filing, except with regard to certain of his claims including, *inter alia*, those asserted against District Attorney Mollen. Dkt. No. 87. Plaintiff's SAC was entered on the docket by the clerk on October 9, 2013. Dkt. No. 88.

On January 22, 2014, notices of appearance were filed by Thomas D. Jackson, Esq., of the law firm of Jackson Bergman LLP, on behalf of several of the defendants named in plaintiff's SAC, including the Binghamton Press & Sun Newspaper, www.pressconnects.com, Sherman M. Bodner, Calvin J. Stoval, Jodie Riesbeck, Kevin J. Crane, Cindy Jarvis, Jay Keller, and

---

[1] Four days later, plaintiff filed ten pages inadvertently omitted from his FAC; those additional pages have been considered part of that pleading. Dkt. No. 9.

4

Anthony Rapczynski (collectively "the Binghamton Press defendants").[2] Dkt. Nos. 143-151. Plaintiff objects to Attorney Jackson representing those defendants, and has requested an order from the court disqualifying him and his partner, Benjamin Bergman, Esq., from appearing on behalf of any of the defendants based upon an alleged conflict of interest arising from Attorney Jackson's former position as a prosecuting attorney in connection with criminal charges against Heyliger. *See generally* Dkt. No. 163.

II. DISCUSSION

Attorney Jackson worked as an Assistant District Attorney ("ADA") in the Broome County District Attorney's Office ("BCDA") from approximately 2002 to 2011. Dkt. No. 166 at 1. On or about May 1, 2011, he started his own private practice with his partner, Benjamin Bergman, Esq., another former Broome County ADA, who left the BCDA at the same time as Jackson. *Id.* at 1-2. Attorney Jackson describes his involvement in prosecuting plaintiff, while employed as an ADA, in the following manner:

> 6. While employed at the District Attorney's Office, I was tasked with handling a large narcotics conspiracy case involving the plaintiff in this action. I also believe that I prosecuted the plaintiff on a felony assault case, as well as a tampering with

---

[2] The individual defendants identified above are all allegedly employed by the Binghamton Press & Sun Newspaper. Dkt. No. 88 at 21-22, 24-28. Defendant www.pressconnects.com allegedly serves as the Binghamton Press & Sun's internet web address. *Id.* at 24.

5

> physical evidence case. In addition to these charges, I briefly handled a case alleging that the plaintiff shot an individual in the City of Binghamton. Upon information and belief, my last day in the Broome County District Attorney's Office was April 29, 2011. These investigations dealt with a number of different police agencies and involved the use of electronic surveillance.
>
> 7. Upon information and belief, my partner, Benjamin Bergman, did not work on this case at all.

*Id.* at 2.

In his role as a private attorney, Attorney Jackson now represents the nine Binghamton Press defendants. Dkt. Nos. 143-51. Plaintiff's SAC, the operative pleading in this case, asserts New York State common law claims of defamation against those defendants stemming from allegations that they published false statements regarding plaintiff's involvement in certain criminal conduct. Dkt. No. 88 at 79-80, 94-95. Plaintiff's motion to disqualify Attorney Jackson and his law firm from representing the Binghamton Press defendants asks the court to consider whether a former government prosecutor may represent clients in a civil case accused of defamation in connection with a plaintiff's alleged criminal activity, where, as a prosecutor, the attorney was tasked with the prosecution of that plaintiff for the alleged criminal activity giving rise to the defamation claims.

"The authority of federal courts to disqualify attorneys derives from

6

their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). A court presented with a motion to disqualify an attorney is tasked with balancing a party's right to "freely . . . choose his counsel . . . against the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *accord, Hempstead Video, Inc.*, 409 F.3d at 132. Courts in this circuit have, in the past, turned to the Canons and Disciplinary Rules of the American Bar Association's Model Code of Professional Responsibility ("Model Code") for guidance in determining whether an attorney should be disqualified. *Hempstead Video, Inc.*, 409 F.3d at 132; *Gen. Motors Corp. v. City of New York*, 501 F.2d 639, 648 (2d Cir. 1974). More recently, however, the Model Code has been replaced by the New York Rules of Professional Conduct, though "the new rules still incorporate much of the substance of the old rules."[3] *Pierce & Weiss, LLP v. Subrogation Partners* LLC, 701 F. Supp. 2d 245 (E.D.N.Y. 2010). Notwithstanding which rules of conduct apply, the Second Circuit has advised that "not every violation of a disciplinary rule will necessarily lead to disqualification," *Hempstead Video, Inc.*, 409 F.3d at

---

[3] The local rules of practice for the Northern District of New York explicitly adopt the New York Rules of Professional Conduct. N.D.N.Y. L.R. 83.4(j).

7

132 (citing *Nyquist*, 590 F.2d at 1246), and "[a]ny doubt is to be resolved in favor of disqualification," *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

Rule 1.11 of the New York Rules of Professional Conduct, which relates to "Special Conflicts of Interest for Former and Current Government Officers and Employees," provides as follows:

> **(a)** Except as law may otherwise expressly provide, a lawyer who has formerly served as a public officer or employee of the government:
> . . .
> *(2)* shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation. This provision shall not apply to matters governed by Rule 1.12(a).

N.Y. Rules of Prof. Conduct R. 1.11(a).[4] The conflict of interest arising from such prior government service is further imputed to the former public officer's law firm unless certain conditions are met. N.Y. Rules of Prof. Conduct R. 1.11(b).

Rule 1.11 of the New York Rules of Professional Conduct is similar to the provisions relied on by the Second Circuit when it disqualified a former

---

[4] Rule 1.12 relates to "Specific Conflicts of Interest for Former Judges, Arbitrators, Mediators or Other Third-Party Neutrals."

8

government attorney in *Gen. Motors Corp.* In that case, a former United States Department of Justice attorney was privately retained by plaintiffs in a civil antitrust lawsuit that was "strikingly similar, though perhaps not identical in every respect, to an antitrust action brought over [the attorney's] signature by the Department of Justice[.]" *Gen. Motors Corp.*, 501 F.2d at 649. The court cited Canon 9 of the Model Code, which provides that "[a] lawyer should avoid even the appearance of professional impropriety." *Id.* at 648 (quotation marks omitted). The court also focused on the corresponding disciplinary rule, DR 9-101, which provides, in pertinent part, that "[a] lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." *Id.* (quotation marks omitted). After concluding that the former government attorney "had 'substantial responsibility' in initiating the Government's Sherman § 2 claim against GM for monopolizing or attempting to monopolize the nationwide market for city and intercity buses," the court turned to the question of "whether the [plaintiff in the civil suit]'s antitrust suit is the same 'matter' as the Government's action[.]" *Id.* at 649. To make that determination, the court compared the complaint used by the Department of Justice against the one used by the plaintiff in the subsequent private action. *Id.* at 650. Because "virtually every overt act

of attempted monopolization alleged in the City's complaint is lifted in haec verba from the Justice Department complaint," the court had no trouble concluding that the plaintiff's "antitrust action is sufficiently similar" to the monopoly case initiated and prosecuted by the former government attorney. *Id.*

Other courts, too, have relied on Canon 9 to disqualify former government officials from representing clients in subsequent matters related to their work as public officials. In particular, as it relates to the specific issue now before me, courts have disqualified "former prosecutor[s] from representing a private client in a civil matter related to or arising out of the criminal prosecution in which he had substantial responsibility." *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 816 (5th Cir. 1976) (citing cases).

The allegations in plaintiff's SAC suggest that the Binghamton Press defendants defamed plaintiff on or about October 7 and 8, 2010, by "intentionally relying on a supply of false reports reported to them by . . . law enforcement officials regarding the plaintiff being . . .. 'A Gang Member Apart of the Bloods, the Biggest Street Gang in Binghamton.'" Dkt. No. 88 at 79-80, 94-95. Plaintiff also alleges that those same defendants

> were totally aware that plaintiff's case was untied to the federal indictment and other 6 state Defendants mentioned in the lineup for the fact that it was obvious due to their previous advertisement of plaintiffs' assault case on the 13th day of September 2010, paired with the time difference in dates of occural [sic], and nature incident.

*Id.* at 95. According to plaintiff, the law enforcement officials conveying the allegedly false information to the Binghamton Press defendants included, *inter alia*, Broome County District Attorney Gerald Mollen, who allegedly assigned plaintiff's case to Attorney Jackson. *Id.*; *see also* Dkt. No. 163 at 1. According to Attorney Jackson's affidavit, he was involved in prosecuting plaintiff for several crimes, including drug-related conspiracy, felony assault, and tampering with evidence. Dkt. No. 166 at 2. Attorney Jackson has not provided any details surrounding his prosecution of plaintiff for those crimes, including any dates relevant to his involvement. *See generally id.*

Admittedly, it is not perfectly clear, from either plaintiff's SAC or his motion seeking disqualification, that Attorney Jackson's conduct as a prosecutor and plaintiff's defamation claims arise from the same "matter" for purposes of Rule 1.11 of the New York Rules of Professional Conduct. *See* N.Y. R. Prof. Conduct R. 1.11(a) (precluding a former government attorney to represent a client "in connection with a matter in which the

lawyer participated personally and substantially as a public officer or employee"). There is no doubt, however, that Attorney Jackson was employed by the BCDA during the times relevant to this lawsuit, and that Attorney Jackson, as a Broome County ADA, personally prosecuted plaintiff for several crimes, which involved investigations by several law enforcement agencies and the use of electronic surveillance. Dkt. No. 166 at 2. Moreover, plaintiff's memorandum in support of his motion alleges that Attorney Jackson was in charge of prosecuting plaintiff "on the dismissed criminal charges which gave rise to this civil action." Dkt. No. 163 at 1. Mindful of the court's obligation to extend special solicitude to *pro se* litigants, and in consideration of plaintiff's SAC and memorandum in support of the motion to disqualify as a whole, I find that plaintiff has satisfied his burden of establishing that Attorney Jackson now represents the Binghamton Press defendants in "a matter in which [he] participated personally and substantially as a public officer[.]" N.Y. R. Prof. Conduct R. 1.11(a); *see also Gen. Motors Corp.*, 501 F.2d at 650; *Allied Realty of St. Paul, Inc. v. Exch. Nat'l Bank of Chicago*, 283 F. Supp. 464, 467-68 (D. Minn. 1968) (disqualifying a former government attorney from representing a client in connection with a fraudulent mortgage claim where the attorney had investigated and passed upon the mortgage transaction during an

earlier trial).

This finding, however, does not end the inquiry because Rule 1.11 appears to provide authorization to Attorney Jackson to represent the Binghamton Press defendants if "the appropriate government agency gives its informed consent, confirmed in writing, to the representation." N.Y. R. Prof. Conduct R. 1.11(a). There is no evidence now before the court that the BCDA has issued its consent, written or otherwise, for Attorney Jackson to represent the Binghamton Press defendants in this matter. *See Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 313 (E.D.N.Y. 2010) (disqualifying a law firm on the basis that, *inter alia*, "there is no written consent to the [law firm]'s representation of plaintiff in this proceeding"). In any event, I am not convinced that, even assuming such consent existed, it would be sufficient to overlook the existing conflict presented by Attorney Jackson's representation of clients in a matter related to his former criminal prosecution of plaintiff. In *Gen. Motors Corp.*, the Second Circuit emphasized that "[t]he ethical problem raised here. . . does not stem from the breach of confidentiality bred by a conflict of interest but from the possibility that a lawyer might wield Government power with a view toward subsequent private gain." *Gen. Motors Corp.*, 501 F.2d at 650 n.20. The court also explained that "there lurks great potential for lucrative

returns in following into private practice the course already charted with the aid of governmental resources." *Id.* at 650. The Fifth Circuit has described the rationale for this rule in the following manner:

> The investigation of the prosecutor was ostensibly in the exercise of official authority; information was obtained from persons, who may have felt, quite naturally, under a sense of coercion or respect for actual or supposed power. The person later sued as a tort feasor may thus have disclosed facts inimical to his best interests in a civil action. Unsuspecting, unshielded, and at serious disadvantage, he submitted to interrogation by one who later, as opposing counsel in a civil action, might use the knowledge thus acquired against him.
>
> If the lawyer making the approach does so under sanction or color of official power, he thereby more certainly disqualifies himself from later participation as counsel in any civil litigation having its basis in or connected with the occurrence previously investigated as to its potential criminal aspects.
>
> A prosecutor cannot profit by information gained in the course of his duties as a public official. Public policy forbids.

*Woods*, 537 F.2d at 816 (quotation marks omitted).

With the above-described precepts in mind, it is difficult to see how the BCDA's consent would eliminate risk of detriment to the public's trust in the integrity of the legal bar. *See Gen. Motors Corp.*, 501 F.2d at 649 ("Indeed the 'public's trust' is the raison d'etre for Canon 9's 'appearance-of-evil' doctrine . . . . [T]his doctrine is directed at maintaining,

in the public mind, a high regard for the legal profession."). Permitting Attorney Jackson to defend the Binghamton Press defendants against plaintiff's accusations of defamation, which, according plaintiff, stem directly from the dismissed criminal charges brought against him by the BCDA giving rise to this action, would allow him the opportunity to appeal to, and quite possibly rely upon (even if unwittingly), his knowledge previously acquired through the criminal prosecution of plaintiff.[5] This is especially true where (1) plaintiff alleges that District Attorney Mollen, under whose supervision Attorney Jackson worked, provided the false information triggering the defamation claims to the Binghamton Press defendants, Dkt. No. 88 at 94-95; and (2) Attorney Jackson has represented to the court that his prosecution of plaintiff for several crimes involved "a number of police agencies and . . . the use of electronic surveillance." Dkt. No. 166 at 2. *See Woods*, 537 F.2d at 815 ("A former prosecutor . . . has access to materials such as investigative reports and grand jury minutes which may not be available to his opponents in a civil trial."). Whether or not the BCDA provides written consent to Attorney Jackson does not eliminate the

---

5    Like the Second Circuit in *Gen. Motors Corp.*, I do not "in the least" intend to intimate that Attorney Jackson "is guilty of any actual impropriety in agreeing to represent" the Binghamton Press defendants. *Gen. Motors Corp.*, 501 F.2d at 649. I remain mindful, however, of the court's directive to "act with scrupulous care to avoid any appearance of impropriety lest it taint both the public and private segments of the legal profession." *Id.*

risk that it may appear as if he is exploiting the power once held as a government official for his own private gain or to unfairly prejudice another party in a private lawsuit. Because such appearance of impropriety is the very basis of ethical rules governing the conduct of former government attorneys who subsequently engage in private practice, I find that, even if the BCDA had provided written consent to Attorney Jackson with respect to his representation of the Binghamton Press defendants, he nonetheless would still be precluded by the rules of professional conduct from his representation of those defendants. *See id.* ("The impropriety perceived in these cases is not so much that a public employee may have contemplated private gain while performing official functions as it is that his exercise of governmental power may be used to the prejudice of one side in a private suit."); *Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.*, 29 Misc.3d 371 (Sup. Ct. N.Y. Cnty. 2010) ("[T]he disqualification provisions [of Rule 1.11] apply regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, *but also to prevent a lawyer from exploiting public office* for the advantage of another client." (emphasis added)).[6]

---

6    To the extent that plaintiff's motion seeks disqualification of Attorney Jackson's law firm as a whole, it is granted. Rule 1.11(b) of the New York Rules of Professional Conduct directs that any existing conflict of a former prosecutor extends to that

III.   SUMMARY AND ORDER

To be sure, motions to disqualify counsel in an action are generally viewed with disfavor and granted only when it is clear that continued representation by an attorney will taint the case.   Because the court remains vigilant in this and other cases to avoid and remedy any appearance of impropriety, however, and resolving all doubts in favor of disqualification, I find it is appropriate to disqualify Attorney Jackson and Jackson Bergman LLP from representing the Binghamton Press defendants in this case.   Accordingly, it is hereby

ORDERED that plaintiff's motion to disqualify the firm of Jackson Bergman LLP from representing defendants Binghamton Press & Sun Newspaper, www.pressconnects.com, Sherman M. Bodner, Calvin J. Stoval, Jodie Riesbeck, Kevin J. Crane, Cindy Jarvis, Jay Keller, and Anthony Rapczynski, (Dkt. No. 163) is hereby GRANTED; and it is further

---

attorney's law firm, where certain specified procedures, including implementation of a screening system, would not otherwise eliminate the appearance of impropriety.   N.Y. R. Prof. Conduct R. 1.11(b).   Here, according to the website of Jackson Bergman LLP, only three attorneys, including Attorneys Jackson and Bergman, work at the firm.   In the court's view, no screening procedures aimed at precluding Attorney Jackson from learning anything about the matter, or any other steps taken by the law firm, would be effective in eliminating the appearance of impropriety described above.   *Filippi*, 722 F. Supp. 2d at 313.

ORDERED that those defendants shall secure replacement counsel, who shall file appropriate notices of appearance, within thirty days of the date of this decision.

Dated: March 10, 2014
Syracuse, New York

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge