UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊

**Derek A. Heyliger,**

**Plaintiff,**

**-v-**                                    **3:11-CV-1293 (NAM/DEP)**

**City of Binghamton Police Department; Broome County Sheriff's Department; J.D. Collins, Sergeant, Binghamton Police Department, individually; Charles Woody, Investigator, Binghamton Police Department, individually; Jim Hawley, Investigator, Binghamton Police Department, individually; Phillip DeAngelo, Investigator, Binghamton Police Department, individually; C. Peters, Investigator, individually; Joseph P. Cornell, Investigator, Binghamton Police Department, individually; Robert W. Kneer, Investigator, Binghamton Police Department, individually; Lewis J. McAllister, Investigator, individually; Matthew P. Zandy, Investigator, Binghamton Police Department, individually; Brendan M. Whalen, Investigator, Binghamton Police Department, individually; Martinez, Investigator, Binghamton Police Department, individually; Eccelston, Chief, Binghamton Police Department, individually; Joseph Zikuski, Chief, Binghamton Police Department, individually; Bracco, Captain, Binghamton Police Department; Freddy Askar, Investigator, Broome County Sheriff's Department, individually; Franklin Birt, Correctional Officer, Broome County Sheriff's Department, individually; Mark Smolinsky, Major, Broome County Sheriff's Department, individually; Timothy Hill, Lieutenant, Broome County Sheriff's Department; John Harder, Investigator, Broome County Sheriff's Department, individually; David E. Harder, Sheriff, Broome County Sheriff's Department, individually; Cathern Maloni, City Court Clerk, individually; Mark Young, Court Appointed Attorney, individually; City of Binghamton; Broome County; Binghamton Press & Sun Newspaper; Fox 34 News in the City of Binghamton; WBNG Channel 12 News in Johnson City; www.pressconnects.com; Sherman M. Bodner; Calvin J. Stovall; Jodie Riesbeck; Kevin J. Crane; Cindy Jarvis; Jay Keller; and Anthony Rapczyski,**

**Defendants.**

◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊

APPEARANCES:

Derek A. Heyliger, 12-B-0269
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929
Plaintiff, *pro se*

City of Binghamton Corporation Counsel
Brian M. Seachrist, Esq., of counsel
38 Hawley Street
City Hall
Binghamton, New York 13901
Attorney for Defendants City of Binghamton Police Department; and City of Binghamton

Broome County Attorney's Office
Robert G. Behnke, Broome County Attorney
Leia D. Schmidt, Esq., Assistant County Attorney
Jennifer Lauren Katz, Esq., Assistant County Attorney
Broome County Office Building
60 Hawley Street
Binghamton, New York 13902-1766
Attorneys for Defendants Broome County Sheriff's Department; Broome County; Freddy Askar; Franklin Birt; Mark Smolinsky; Timothy Hill; John Harder; and David E. Harder

City of Binghamton Corporation Counsel
Brian M. Seachrist, Esq., of counsel
38 Hawley Street
City Hall
Binghamton, New York 13901
and
Leonard & Cummings, LLP
Hugh B. Leonard, Esq., of counsel
Patricia A. Cummings, Esq., of counsel
84 Court Street, Suite 402
Binghamton, New York 13901
Attorneys for Defendants J.D. Collins; C. Peters; Joseph P. Cornell; Robert W. Kneer; Lewis J. McAllister; Matthew P. Zandy; Brendan M. Whalen; Martinez; Eccleston; Joseph Zikuski; Bracco; Charles Woody; Jim Hawley; and Phillip DeAngelo

Hon. Eric T. Schneiderman, Attorney General of the State of New York
John F. Moore, Esq., Assistant New York State Attorney
The Capitol
Albany, New York 12224
Attorney for Defendant Cathern Maloni

Costello, Cooney & Fearon PLLC

Nicole M. Marlow-Jones, Esq., of counsel
500 Plum Street - Suite 300
Syracuse, New York 13204
Attorney for Defendant Mark Young

Hancock Estabrook LLP
Alan J. Pierce, Esq., of counsel
Zachary M. Mattison, Esq., of counsel
100 Madison Street, Suite 1500
Syracuse, New York 13202
Attorneys for Defendants Binghamton Press & Sun Newspaper; www.pressconnects.com; Sherman M.
Bodner, Calvin J. Stovall; Jodie Riesbeck; Kevin J. Crane; Cindy Jarvis; Jay Keller; and Anthony
Rapczyski

Fox 34 News in the City of Binghamton
Defendant, *pro se*

Bond, Schoeneck & King, PLLC
Jonathan B. Fellows, Esq., of counsel
Suzanne M. Messer, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202
Attorneys for WBNG Channel 12 News in Johnson City

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

This events that are the subject of this action begin with the September 12, 2010 arrest of plaintiff by members of the Broome County Special Investigations Unit on charges of gang assault. Authorities subsequently charged plaintiff with tampering with physical evidence in connection with the September 12, 2010 arrest. Ultimately, all charges were dismissed. In his *pro se* second amended complaint, plaintiff, who is currently incarcerated on a conviction for unrelated charges, claims that defendants deprived him of various rights under the United States and New York State Constitutions, federal statutes, and New York State common law.

The following motions are presently before the Court:

- Dkt. No. 215: Motion for summary judgment by WBNG Channel 12 News in Johnson City;

- Dkt. No. 219: Motion for summary judgment by defendants J.D. Collins; C. Peters; Joseph P. Cornell; Robert W. Kneer; Lewis J. McAllister; Matthew P. Zandy; Brendan M. Whalen; Martinez; Eccleston; Joseph Zikuski; and Bracco;

- Dkt. No. 227: Motion for summary judgment by defendant Catherine Maloney (sued as Cathern Maloni);

- Dkt. No. 230: Motion for summary judgment by defendants Binghamton Press & Sun Newspaper, Sherman M. Bodner, Kevin J. Crane, Cindy Jarvis, Jay Keller, Anthony Rapczynski, Jodie Riesbeck, Calvin J. Stovall, and www.pressconnects.com;

- Dkt. No. 232: Motion for summary judgment by defendant Charles Woody; Jim Hawley; Phillip DeAngelo;

- Dkt. No. 234: Motion for summary judgment by defendants Broome County, Broome County Sheriff's Department, Freddy Askar, Franklin Birt, David E. Harder, John Harder, Timothy Hill, Mark Smolinsky;

- Dkt. No. 235: Motion for summary judgment by defendant Mark Young;

- Dkt. No. 237: Motion for summary judgment by the City of Binghamton and the City of Binghamton Police Department.

As explained below, the Court grants the motions and awards summary judgment dismissing the action in its entirety.

## FACTS

The following facts are undisputed unless otherwise indicated. On September 12, 2010, members of the Broome County Special Investigations Unit arrested plaintiff on charges of Gang Assault, First Degree, Penal Law 20.00, 120.07, and Assault, Second Degree, Penal Law 20.00, 120.05 ("Gang Assault charges") arising from an incident occurring in the early morning hours of

September 12, 2010.  Plaintiff was turned over to the custody of the Binghamton Police

Department.  The felony complaint filed on the same day by Binghamton City Police Department

Investigator Charles Woody, Jr. ("Investigator Woody") in Binghamton City Court stated that the

complaint was based on "Supporting Deposition of Corey Hurbert and Police Investigation."  The

record contains two signed affirmations by the victim of the alleged assault, Corey T. Hurbertt,

dated September 12, 2010 and September 13, 2010.[1]  Hurbertt's September 12, 2010 statement

included the following: that in the early morning of September 12, 2010, he went to Kennedy's

Fried Chicken to get takeout food; that while he was waiting inside, he was approached by people

he knew to be members of the Bloods gang; that one of them asked him to step outside; that

Hurbertt complied; and that when he went outside, he was attacked by several Bloods members

with knives.  Hurbertt named one of the attackers as "Swish"; it is undisputed that plaintiff was

known by this name.  The September 13, 2010 statement was similar, and added the fact that

Hurbertt had identified plaintiff from a photograph.

On September 16, 2010, a Broome County grand jury indicted plaintiff on the Gang

Assault charges.  Broome County Court assigned defendant Mark Young, Esq. ("Attorney

Young") to represent plaintiff.  Attorney Young waived a preliminary hearing, and plaintiff

remained in custody.

On October 7 and 8, 2010, defendants WBNG Channel 12 News ("WBNG") and the

Binghamton Press & Sun Newspaper ("Binghamton Press & Sun") reported on a press conference

at which the United States Attorney's Office and the Broome County District Attorney described

---

[1] Corey T. Hurbertt's last name is spelled various ways throughout the record.  The Court uses the spelling that Hurbertt used when he signed his Supporting Depositions.

their investigation into gang-related activity in the Binghamton area and the recent gang-related arrests of more than a dozen people accused of being associated with the Bloods street gang. The news reports specified that plaintiff and another man had been arrested on September 12, 2010 and indicted on New York State charges in connection with the stabbing outside of Kennedy Fried Chicken. The televised newscasts featured photographs of a number of arrestees, including plaintiff.

Plaintiff alleges that on October 13, 2010, at Broome County Correctional Facility, "[i]nmate and gang member Janiere Evans walked into plaintiff's cell in plain view of Defendant Franklin Birt and threatened to assault plaintiff"; that Corrections Officer ("C.O.") Birt ordered Evans out of plaintiff's cell; that C.O. Birt "deliberately failed to enforce disciplinary action against Evans for trespassing in plaintiff's cell and threatening plaintiff"; that on November 6, 2010, Evans assaulted plaintiff, injuring him.

On November 22, 2010, Broome County Court set bail on the Gang Assault charges at $10,000 cash or $20,000 property. On the following day, November 23, 2010, Investigator Woody filed a felony complaint charging plaintiff with Tampering with Physical Evidence ("Tampering charge"), Penal Law § 215.40(2). The felony complaint stated that defendant intentionally destroyed his cell phone when he was taken into custody on September 12, 2010 by breaking it in pieces in an attempt to prevent the police from recovering it as evidence. According to plaintiff, an arrest warrant for Tampering was filed the same day.

Plaintiff testified at his deposition that he was arraigned in Binghamton City Court on the

Tampering charge on or about January 15, 2011, and the court set $250 bail.[2]  On January 25, 2011, the court assigned Attorney Young to defend plaintiff.  In the second amended complaint and at his deposition, plaintiff complains that Attorney Young cancelled the preliminary hearing, which had been scheduled for January 25, 2011.  On February 17, 2011, plaintiff posted bail on the Gang Assault and Tampering charges and was released.  On March 4, 2011, a Broome County grand jury indicted plaintiff on the Tampering charge.

On April 2, 2011, Broome County Court dismissed the charge of Gang Assault, First Degree, and on May 20, 2011, the court dismissed the remaining assault charge stemming from the September 12, 2010 incident.  The Tampering charge was dismissed on January 23, 2012.

On April 29, 2011, Broome County Court issued a warrant for plaintiff's arrest based on a sealed indictment on unrelated charges.  Plaintiff was arrested on or about May 5, 2011, and on May 6, 2011, Broome County Court assigned Attorney Young to represent plaintiff on those charges: one count of assault, first degree, Penal Law 120.10(1), and two counts of criminal possession of a weapon, second degree, Penal Law 265.03(1)(b);(3), stemming from a shooting at Victoria's Café (also known as Glo's Restaurant) in Binghamton on August 15, 2010.  Plaintiff was indicted on those charges on May 10, 2011.  On January 18, 2012, Broom County Court entered judgment on a jury verdict of guilty as charged and sentenced him to 14 years in prison.  The Appellate Division, Third Department, upheld the conviction, and the Court of Appeals denied leave to appeal.  *People v. Heyliger*, 126 A.D.3d 1117, 5 N.Y.S.3d 566 (3d Dep't 2015), *leave to appeal denied*, 25 N.Y.3d 1165 (2015).

---

[2] The record does not definitely establish the date plaintiff was brought before Binghamton City Court on the Tampering charge and when bail was set.  It is not necessary to establish these dates with certainty in order to decide the issues herein.

## SECOND AMENDED COMPLAINT

The 192-page *pro se* second amended complaint contains eight "claims," each containing

multiple "causes of action."  The pleading is rife with repetition and overlapping claims.

Generally, the subjects of the eight claims are as follows:

| | |
|---|---|
| Claim One: | Claims stemming from plaintiff's arrest on Gang Assault charges on September 12, 2010; |
| Claim Two: | Claims based on the alleged interrogation of plaintiff on September 14, 2010; |
| Claim Three: | Claims related to media reports of a press conference on October 7, 2010; |
| Claim Four: | Claims based on an alleged altercation on October 13, 2010 while plaintiff was incarcerated at Broome County Correctional Facility; |
| Claim Five: | Claims arising from the issuance of an arrest warrant against plaintiff on the Tampering charge on November 23, 2010 ; |
| Claim Six: | Claims stemming from plaintiff's arraignment on the Tampering charge; |
| Claim Seven: | Claims based on the cancellation of a preliminary conference scheduled on the Tampering charge; and |
| Claim Eight: | Claims connected with the bail set for plaintiff's Tampering charge and plaintiff's release on bail on February 17, 2011. |

Reading this *pro se* plaintiff's papers most liberally and interpreting them to raise the

strongest arguments they suggest, the Court finds that the second amended complaint asserts

federal claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  Claims under 42 U.S.C. § 1983

include claims that defendants infringed the following federal constitutional rights: plaintiff's

Fourth Amendment protection against unreasonable seizure; his Due Process Clause protection

against improper custodial interrogation; his Due Process Clause right to protection while in

custody; and his rights under the Equal Protection Clause.

## STANDARD ON SUMMARY JUDGMENT

A party moving for summary judgment must show "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this

burden, the burden shifts to the non-movant to adduce evidence establishing the existence of an

issue of material fact. *See Linares v. McLaughlin*, 423 Fed.Appx. 84, 86 (2d Cir. 2011). If the

non-movant fails to make such a showing, the movant is entitled to summary judgment. When

deciding a summary judgment motion, a court must "resolve all ambiguities and draw all factual

inferences in favor of the party opposing the motion." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (citation omitted). Conclusory statements or mere allegations, however, are not

sufficient to defeat a summary judgment motion. *Id.* The court must grant summary judgment

where the non-movant's evidence is conclusory, speculative, or not significantly probative.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(internal quotation marks omitted). Where, as here, the nonmovant is proceeding *pro se*, the court

must read that party's papers liberally and interpret them to raise the strongest arguments they

suggest. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

## SECTION 1983

Title 42 U.S.C. § 1983 ("section 1983") provides a cause of action against "[e]very person

who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ...

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"

Section 1983 does not itself create enforceable rights; rather, it "provides a method for

vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (quotation

marks omitted). "Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). A non-state actor may be liable under section 1983 if he or she "acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). To prove a conspiracy under section 1983, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### FOURTH AMENDMENT– CLAIM ONE

The second amended complaint pleads numerous violations of plaintiff's Fourth Amendment protection against unreasonable seizure of his person. Under the Fourth Amendment, a seizure of a person is reasonable if based on probable cause to believe that the person has committed a crime. *See Dunaway v. New York*, 442 U.S. 200, 213 (1979). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) (citation omitted). The inquiry focuses on the facts known to the arresting officer at the time of the arrest, *see Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007), viewed in light of the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). An arresting officer's reasonable mistake about relevant facts does not undermine the existence of probable cause. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008).

-10-

Plaintiff's challenges to various aspects of his arrest, detention, and prosecution on the Gang Assault charges are primarily set forth in Claim One. Section 120.07 of New York's Penal Law provides: "A person is guilty of gang assault in the first degree when, with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." Section 120.05(1) and (2) of the Penal Law provides: "A person is guilty of assault in the second degree when 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or 2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument[.]"

The undisputed facts establish that the arrest and detention of plaintiff on the Gang Assault charges was based principally on the written affirmation by the victim of the assault, Corey T. Hurbertt. Hurbertt described the assault in detail and identified one of the perpetrators as "Swish," which was one of plaintiff's aliases. The Court easily finds that plaintiff's September 12, 2010 arrest on these charges was supported by probable cause.

Plaintiff contends, however, that probable cause for his arrest and detention was in fact lacking. He alleges that defendants intentionally procured false statements from Hurbertt and suppressed evidence of plaintiff's alibi. There is no evidence supporting such allegations of misconduct, and no jury could find in plaintiff's favor on this issue absent impermissible speculation and conjecture. These allegations do not raise a material question of fact on plaintiff's Fourth Amendment claims that his September 12, 2010 arrest and detention were not based on probable cause.

-11-

Claim One may be also construed to assert a section 1983 claim of malicious prosecution stemming from the prosecution on the Gang Assault charges. A plaintiff may succeed on a malicious prosecution claim under section 1983 by showing that, under color of state law, a defendant subjected him to a "post-arraignment liberty restraint [that] implicate[s] the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). The plaintiff must also satisfy the four elements of a New York State claim for malicious prosecution: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Id.* Under New York law, "indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). Here, a grand jury indicted plaintiff on the Gang Assault charges on September 16, 2010. There is no evidence supporting plaintiff's allegations of misconduct by various defendants. Thus, plaintiff has failed to overcome the presumption of probable cause to prosecute arising from the indictment. No reasonable jury could find in plaintiff's favor on this claim absent impermissible speculation and conjecture.

Based on the undisputed facts, viewing the disputed facts most favorably to plaintiff, and resolving all ambiguities and drawing all factual inferences in favor of plaintiff, the Court finds that plaintiff cannot succeed on a section 1983 claim of unreasonable seizure based on lack of probable cause to arrest, detain, and prosecute him on the Gang Assault charges.

# CUSTODIAL INTERROGATION – CLAIMS ONE AND TWO

The second amended complaint asserts in Claims One and Two that plaintiff was wrongfully subjected to custodial interrogation. Claim One alleges wrongful custodial interrogation by Binghamton City Police Officer C. Peters ("Officer Peters") and Investigator Woody after plaintiff's arrest on September 12, 2010. Claim Two alleges wrongful custodial interrogation by Binghamton City Police Officer Martino ("Officer Martino") (sued as Officer Martinez) on September 14, 2010. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The Fifth Amendment by its own terms grants a person the right to be silent so as not to be a witness against himself in a criminal case, and to suffer no penalty for the exercise of that right." *Weaver v. Brenner*, 40 F.3d 527, 535 (2d Cir. 1994). As the Second Circuit explains:

> While plaintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings, a § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding.

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998); *accord Higazy v. Templeton*, 505 F.3d 161, 171 (2d Cir. 2007). Where, however, an officer engages in coercive custodial interrogation techniques that "shock[] the sensibilities of civilized society," such outrageous government conduct in itself violates a suspect's substantive due process rights. *Deshawn E.*, 156 F.3d at 348 (quoting *Moran v. Burbine*, 475 U.S. 412, 433 (1986)).

After his arrest on September 12, 2010, plaintiff was taken to the Binghamton City Police Department and placed in an interview room for questioning. It is undisputed that Officer Peters

-13-

and Investigator Woody entered the interview room; that Investigator Woody read plaintiff his Miranda warnings; that plaintiff then asked what they wanted to talk to him about; that the two officers said they would not discuss anything until plaintiff waived his Miranda rights; that plaintiff refused to waive his Miranda rights; that the two officers then left the room; and that approximately five minutes had elapsed from the time plaintiff was brought into the interview room until the two officers left. Plaintiff testified at his deposition that he was then left alone in the room with his leg shackled to the floor for three hours. He further testified that when Officer Peters and Investigator Woody returned, they told plaintiff he was under arrest for Gang Assault, first degree, and took him to be booked. Plaintiff makes no claim that anyone harmed him.

A DVD with an audio and visual recording of the interview is part of the record.[3] It clearly shows that plaintiff walked into the room in the beginning of the interview and walked out afterwards without handcuffs or shackles and that he was not handcuffed or shackled at any time. When plaintiff stated he would not answer any questions, Investigator Woody said "Okay, we're pretty much done," directed plaintiff to empty his pockets, and then said "Sit tight and I'll come explain a little bit more about the process." The two officers left the room. Plaintiff remained seated in the interview room until they returned, about 45 minutes – not three hours – later. They told plaintiff he would be taken to booking, and the three left the room.

Plaintiff further alleges that on September 14, 2010, guards at the Broome County Correctional Facility, where he was being held on the Gang Assault charges, told him he was going to be taken to "medical"; however, he was actually taken to meet Officer Martino.

---

[3] The DVD bears a date stamp of September 12, 2011; however, it is undisputed that it depicts the interview occurring on September 12, 2010.

According to plaintiff, Officer Martino said that he worked with the District Attorney's Office and that, if plaintiff wanted to help himself, he could provide information about any of Officer Martino's investigations, and Officer Martino would report his cooperation to the District Attorney's Office. Plaintiff states that he responded: "Help myself out? What you're saying is you want me to help you out." Plaintiff states that Officer Martino replied, "Well, if that's the way you want to put it"; that plaintiff then stated: "I have no information that can help you with your investigation. Can I go back to my housing unit now?"; that the conversation then ended; and that plaintiff was returned to his housing unit.

No rational jury could find that plaintiff was subjected to improper custodial interrogation during either incident. The DVD of the September 12, 2010 interview establishes as a matter of law that Investigator Woody immediately advised plaintiff of his *Miranda* rights, that plaintiff exercised his right to remain silent, and that he was not handcuffed, shackled, or mistreated in any way during the 45 minutes he remained in the interview room before being taken to booking. As for the September 14, 2010 incident, plaintiff's own testimony establishes that Officer Martino did not question him and that, as soon as plaintiff asked to be returned to his cell, officials complied. There is no evidence of a violation of plaintiff's Fifth Amendment right to remain silent in either incident. Nor is there evidence of a due process violation based on coercion in either incident; indeed, there is no evidence that plaintiff was even questioned, much less subjected to coercive custodial interrogation techniques that shock the sensibilities of civilized society. In addition, no rational jury could find in plaintiff's favor on his wholly unsupported claim that, in retaliation for plaintiff's refusal to talk to him on September 14, 2010, Officer Martino conspired with other defendants to influence the District Attorney's office "to quickly

push plaintiff's then 1st degree gang assault charges in front of the Broome County grand jury" in order to "keep [plaintiff] detained." Based on the undisputed facts, viewing the disputed facts most favorably to plaintiff, and resolving all ambiguities and drawing all factual inferences in favor of plaintiff, the Court finds that plaintiff's section 1983 claims of improper custodial interrogation lack merit as a matter of law. The Court finds no other viable federal cause of action in Claims One and Two.

## MEDIA DEFENDANTS – CLAIM THREE

In Claim Three, plaintiff claims that his First Amendment and other rights were infringed by WBNG and a number of other defendants allegedly associated with Binghamton Press & Sun (collectively, "media defendants"). Briefly, the facts are as follows. WBNG sent a reporter to a press conference on October 7, 2010 at which the United States Attorney's Office and the Broome County District Attorney reported on an investigation into recent drug and gang-related arrests in the Binghamton area. On the same day, WBNG broadcast televised news stories based on the information provided at the press conference. Essentially, the broadcasts reported the arrests of "more than a dozen people suspected of gang related crime in greater Binghamton"; featured photographs of the arrestees, including plaintiff; stated that the individuals featured by law enforcement during the press conference had "all been arrested, accused of being associated with a street gang known as the Bloods"; and specified that plaintiff and another man had been arrested and indicted on New York State charges in connection with a stabbing outside of Kennedy Fried Chicken.

News articles mentioning plaintiff appeared in the Binghamton Press & Sun on September 13, October 7, and October 8, 2010. The September 13, 2010 news article reported the arrest and

charges against plaintiff and two others for gang assault. The October 7, 2010 news article included the following: "Local and federal prosecutors said Wednesday 15 people have been arrested following a year-long investigation into the Bloods street gang"; "Seven people were charged with state felony charges as a result of the investigation"; and "Derek 'Swish' Heyliger, 30; and David 'YG' Holmes, 18, both of Binghamton, were indicted in September on state felony charges of first-degree gang assault in connection with a Sept. 12 stabbing in front of Kennedy Fried Chicken in Binghamton[.]" The October 8, 2010 article was to the same effect.

Plaintiff alleges that he is not a member of the Bloods or any other gang and that the reports caused him injury. He asserts section 1983 claims for various federal constitutional violations. Although the media defendants are not state actors, they may be liable under section 1983 if they "acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324. Plaintiff's conspiracy theory is that the media defendants conspired with the District Attorney and United States Attorney to give the false impression that plaintiff was a member of the Bloods gang by reporting on his September 12, 2010 arrest in the articles and broadcasts about the October 7, 2010 press conference. The alleged purpose of the conspiracy was to "misus[e] plaintiff as a scapegoat" and label him as a gang member for the purpose of covering up for a failed federal investigation.[4] There is no evidence of such a conspiracy or any other conspiracy between the media defendants and any state actor to deprive plaintiff of any federal statutory or constitutional right. Thus, plaintiff cannot assert section 1983 claims against the media defendants. In any event, there is no factual support for plaintiff's

---

[4] Plaintiff has requested dismissal of his claims against John Harder, whom he sued in the mistaken belief that he was the Assistant United States Attorney who conducted the federal investigation. All claims against John Harder are dismissed.

-17-

substantive constitutional claims of denial of plaintiff's rights to free speech, equal protection, or other federal right in connection with these reports.

Read liberally, the second amended complaint also asserts conspiracy claims against the media defendants under 42 U.S.C. § 1985(3) ("section 1985(3)").  The four elements of a section 1985(3) claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).  In addition, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. at 829.; *accord Mian v. Donaldson, Lufkin & Jenrette Sec. Corp*., 7 F.3d 1085, 1087-88 (2d Cir. 1993).  "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  Plaintiff presents only conclusory allegations of conspiracy that are insufficient to withstand summary judgment.

Plaintiff also asserts a cause of action against the media defendants under 42 U.S.C. § 1981 ("section 1981"), which protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  Plaintiff alleges that the media defendants and others "maliciously carried out a conspiracy to treat plaintiff differently through their culpable conduct based on plaintiff's arrest history and criminal record than the way

-18-

class-based citizens with no criminal record or no arrest history are treated that find themselves similarly situated[.]" Section 1981 does not protect people who have arrest histories and criminal records from being treated differently from those who do not. To the extent this cause of action is read to include a section 1981 claim of racial discrimination against the media defendants, such a claim is wholly unsupported by the record.

Plaintiff further claims that the media defendants defamed him by advertising and publishing law enforcement officers' statements which misled the public into believing that plaintiff was a member of the Bloods street gang. There is no federal cause of action for defamation; it "is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). There is no legal or evidentiary support for the remaining claims against the media. The Court finds no viable federal cause of action in Claim Three. Plaintiff's claims against John Harder and Gerald Mollen have been dismissed and provide no basis for municipal liability or any other liability on the part of any City or County defendants. Reading plaintiff's papers most liberally, interpreting them to raise the strongest arguments that they suggest, and viewing the facts most favorably to plaintiff, the Court holds that all defendants are entitled to summary judgment dismissing all federal causes of action in Claim Three.

## FAILURE TO PROTECT– CLAIM FOUR

Claim Four alleges that on October 13, 2010 at Broome County Correctional Facility, "[i]nmate and gang member Janiere Evans walked into plaintiff's cell in plain view of Defendant Franklin Birt and threatened to assault plaintiff"; that Corrections Officer ("C.O.") Birt ordered Evans out of plaintiff's cell; that C.O. Birt "deliberately failed to enforce disciplinary action

against Evans for trespassing in plaintiff's cell and threatening plaintiff"; and that on November 6, 2010, Evans assaulted plaintiff, causing injury.

Prison officials have an obligation under the United States Constitution "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). At the time of the alleged assault, plaintiff was a pretrial detainee; thus, his failure-to-protect claim is analyzed under the Due Process Clause of the Fourteenth Amendment.[5] *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). To prevail on such a claim, plaintiff must show that "(1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the defendant prison officials possessed sufficient culpable intent." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). A corrections officer acts with sufficient culpable intent when he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.*

As relevant to the alleged October 13, 2010 incident, C.O. Birt stated in his affidavit on this motion:

> 3. There was no "keep apart" requirement between Derek A. Heyliger and Janiere Evans.
> 4. Sometime between September and November 6 of 2010, I observed Mr. Evans in the cell of Derek A. Heyliger[.]
> 5. I directed Mr. Evans to leave the cell of Mr. Heyliger.
> 6. Mr. Evans complied with my direction and left the cell of Mr. Heyliger without incident.
> 7. I did not observe any indication of animosity by Mr. Evans toward Mr. Heyliger.
> 8. Mr. Heyliger did not advise me of any threat posed by Mr. Evans.

---

[5] A failure-to-protect claim by a convicted prisoner is properly brought under the Eighth Amendment as a violation of the prohibition of "cruel and unusual punishment." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

9.  I made no note of this interaction with Mr. Evans and Mr. Heyliger in any written form.

In his deposition, plaintiff testified regarding this incident:

Q.    All right. I'm going to direct your attention to the incident in the jail with Mr. Evans.  When Officer Birt directed Mr. Evans to leave your cell, did you request protective segregation?

A.    No, I didn't request protective segregation.

Q.    Why didn't you request protective segregation?

A.    Because at that point in time, I figured all right, it's self-explanatory, police just seen this guy come to my cell. He gets no type of – no type of infraction, no kind of keep-lock, nothing, just pretty much – gets to pretty much walk around.

Now, I have a reputation also. Okay. And my reputation does not call for asking for segregation or asking for – asking for protective custody in situations where ... first and foremost, I didn't feel that he was really capable of doing any type of bodily harm that I couldn't handle any way.  So as a result, you know, my thing was that I was nervous that this person might become a problem, but I just said, "All right, I'm just going to keep my distance from him, just going to maintain distance," come to him – since I realized the police didn't do anything, I just came to him, and I said, "Yo, listen, there's no problem," you know.  I talked to a few – few individuals, and I just said, "Yo, listen, I got a situation going on.  I don't need no more static. I don't need no more problems. You know what I'm saying? This is going to make it harder on me."

... The situation that I was in does not call for me to segregate myself. I needed to be in  population so I could work on bailing myself out of jail, and that was the main thing.  I was focused on my case, staying out of trouble, and the best thing that I could do was all right, I'm not going to say "oh, yeah, request." I just decided that I would go to him, say "Listen, we don't have a problem. Everything's cool," kill him with kindness and fall back away from him. And it seemed that he was so paranoid by me that it seemed that that didn't work.

***

Q.    So to clarify, Officer Birt saw the incident –

A.    He saw the incident.

Q.    – came over –

A.    Came to my cell and came in the cell, told him, "Mr. Evans, break it up, get out of here, get out of his cell," and pretty much after he did his 15-minute relief, he left, and he maintained to stay in the pod, and that was pretty much what it was, so I had to live with that. And being that I was fighting these charges, I didn't want no static with this dude, and

-21-

I basically had said, "All right, the best thing to do is I don't want him to feel uncomfortable, and I'm not going to, like, sign in [to protective custody]."...

Plaintiff's testimony establishes that on a single occasion, Evans entered plaintiff's cell. C.O. Birt observed Evans enter, came to the cell, and told Evans to get out. Evans complied without incident. Plaintiff does not state that C.O. Birt had any reason to know that Evans made a threat to plaintiff. C.O. Birt's affidavit is to the same effect. No rational jury could find, based on this single brief incident, that plaintiff was confined under conditions posing a substantial risk of serious harm. Indeed, plaintiff himself thought he could handle the situation and did not seek protective custody or otherwise ask for assistance. Further, based on the undisputed evidence, no reasonable jury could find that C.O. Birt was acted with culpable intent. To the contrary, the evidence is that C.O. Birt acted promptly to remove Evans from the cell, and had no reason to believe that Evans posed a continuing threat to plaintiff. There is no evidentiary support for plaintiff's conjecture that C.O. Birt was obligated to send Evans to administrative segregation but did not do so because he "did not feel like documenting an incident report." Accordingly, there is no evidence upon which a reasonable jury could find that C.O. Birt knew plaintiff faced a substantial risk of serious harm or that he disregarded any such risk by failing to take reasonable measures to abate the harm. C.O. Birt is entitled to summary judgment on the Fourteenth Amendment failure-to-protect claim.

County defendants David E. Harder, Broome County Sheriff; and Lt. Tim Hill; Mark Smolinsky, Jail administrator of the Broome County Correctional Facility, who submitted uncontradicted affidavits stating that they took no part in the alleged incident at Broome County Correctional Facility, on November 6, 2010, and have no knowledge of any interaction between

plaintiff and another inmate, are entitled to dismissal of the federal failure-to-protect claims against them. With respect to the other defendants in this cause of action, there is no evidence of personal involvement, conspiracy, supervisory liability, *Monell* liability, or other basis for liability. The Court finds no viable federal cause of action in Claim Four. Based on the undisputed facts, viewing the disputed facts most favorably to plaintiff, and resolving all ambiguities and drawing all factual inferences in favor of plaintiff, the Court finds no evidentiary support for plaintiff's Fourteenth Amendment failure-to-protect claim against any defendant arising from the alleged altercation on October 13, 2010.

## CLAIMS FIVE THROUGH EIGHT

Claims Five through Eight focus primarily on the filing of the felony complaint and arrest warrant on the Tampering charge on November 23, 2010, and plaintiff's subsequent prosecution on that charge.[6] The thrust of these causes of action is that the City and County defendants, plaintiff's defense attorney Mark Young, Esq., and City Court Clerk Catherine Maloney, separately and as a conspiracy, engaged in misconduct for the purpose of preventing plaintiff's release on bail. In Claim Five and elsewhere, plaintiff claims that, without probable cause, defendants procured the filing of an arrest warrant on the Tampering charge to prevent him from being released on bail. Claim Six asserts various causes of action centering on plaintiff's being brought before Binghamton City Court on the Tampering charge on or about January 15, 2011, allegedly without probable cause and after unreasonable delay. Claim Seven centers on the cancellation of the preliminary hearing scheduled for January 25, 2011 on the Tampering charge.

---

[6] The record contains the felony complaint filed by Investigator Woody on the Tampering charge on November 23, 2010. For purposes of this Memorandum-Decision and Order, the Court assumes that plaintiff is correct that an arrest warrant was filed the same day.

Claim Eight appears to be based on plaintiff's posting of bail on all charges on February 17, 2011, and his mental distress following his release on bail. In support of his contention that defendants' alleged misconduct was motivated by the desire to prevent his release on bail from the Gang Assault charges, plaintiff points out that the arrest warrant for Tampering was filed on November 23, 2010, one day after bail was set on the Gang Assault charges; that Attorney Young cancelled the preliminary conference on the Tampering charge; that plaintiff received no response to letters he allegedly wrote to Catherine Maloney, Binghamton City Court Clerk; and that bail was not promptly set on the Tampering charge.

The Court finds there was probable cause for the felony complaint, arrest warrant, and prosecution on the Tampering charge. Section 215.40(2) of the Penal Law, "Tampering with Physical Evidence," provides that a person is guilty of tampering with physical evidence when, "[b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by any act of concealment, alteration or destruction[.]" Plaintiff testified as follows regarding the breaking of his cell phone during his arrest on September 12, 2010:

> A.   ... That phone broke within – the course of me getting down on the floor to cooperate with orders that I was given at gun point. Okay.
> ***
> Q.   The phone did break though; correct?
> A.   The phone did break. The phone –
> Q.   Broke in two?
> A.   It broke in two....
> ***
> Q.   Was it in your pocket. when it broke?
> A.   No, it was in my hand.
> Q.   Was it in both of your hands?
> A.   One part of the phone – when I – when I was apprehended, he took the phones off of me. One was in – one part of the receiver was in one hand, and the other one was in this hand....

-24-

Q. So you picked up your phone – you opened your flip phone and broke it in two?

A. I didn't open ... my flip phone and break it in two. I was on the phone when they actually ran down on me.

Q. You took a hand on both sides and spread it apart broke it; correct?

A. The phone twisted, and it was broke.

\*\*\*

Q. And during the course of that arrest, you – your cell phone was broken?

A. My cell phone broke as I was going to comply to get down on the floor. The phone snapped in two.

\*\*\*

Q. Okay. And that was – it's your testimony that ... you did that accidently while you were being arrested?

A. As I was going down on the – I mean, I got – I got probably about – between seven to ten guns pointed at me. I'm behind a vehicle, and I'm a little scared. My hands are shaking. Once I seen them pull up and I seen all them guns and I'm hearing "Swish, we'll fucking shoot you," yeah, with machine guns in my face, yeah, my life was in danger at that point in time. I definitely started shaking. My hands started shaking, and I started panicking, yes, I did.

Regarding the breaking of the cell phone, plaintiff states in his papers on this motion:

On September 12, 2010 at approximately 11:45 a.m. at the location of Matis and Clinton Street in the City of Binghamton members of the Broome County Special Investigations Unit (Sergent J.O. Collins, Sergent Fred Askar, Investigator James Hawley, Investigator Kittle and Officer Harder) ordered Plaintiff at gun point to show them his hands.

Once Plaintiff complied with this order the above named officers gave Plaintiff further orders to get down on the ground in (spread eagle position) and threatening Plaintiff stating "Swish I'll fucking shoot you, get down on the fuckin ground." This occurred after Plaintiff exited a white four [door] sedan. In the process of Plaintiff complying with orders to get down on the ground, Plaintiff's cell phone was broken, by Plaintiff.

Plaintiff's cell phone remained in Plaintiffs possession until defendant Hawley took both sides of Plaintiffs flip phone out of Plaintiffs left and right hands.

Plaintiff submits an affidavit of Charles Deluchia, who says he observed the arrest.

Deluchia writes that, after plaintiff got down on the ground, the police "approached him quickly

and then helped him up. When doing so in each of his hands which were in closed fist the police took objects out of each hand[.]"

As seen above, plaintiff acknowledges that his flip phone broke in two while he was holding one part of it in one hand and the other part in the other hand as he was going to the ground during his arrest on September 12, 2010. For purposes of this motion, the Court assumes the truth of plaintiff's statements that he owned the cell phone, that he retained possession of it, and that it broke while it was in his hands. Ownership and possession of the evidence in question does not, however, necessarily provide a defense to a charge of Tampering; subsection (2) of section 215.40 simply criminalizes the destruction of physical evidence with the intent to prevent its use in a prospective official proceeding. Based on plaintiff's own version of what occurred, law enforcement officials had probable cause to believe that plaintiff intentionally destroyed his cell phone in the course of his arrest. In view of the information they possessed at the time of the filing of the felony complaint, including Hurbertt's statements that plaintiff was a member of the Bloods and had participated in the September 12, 2010 assault on Hurbertt, law enforcement officials had probable cause to believe that plaintiff's purpose in destroying the phone was to prevent its use in charging and prosecuting plaintiff and/or other gang members for the assault on Hurbertt. Thus, there was probable cause for the felony complaint, arrest warrant, and prosecution on the charge. Moreover, the grand jury indictment of plaintiff on the charge on March 4, 2011 establishes probable cause to prosecute.

Plaintiff contends that any finding of probable cause for the felony warrant, arrest warrant, and prosecution for Tampering is overcome by evidence that the charge resulted from fraud, perjury, and suppression of exculpatory evidence, and was part of a conspiracy to deprive him of

-26-

his rights.  *See McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) ("[A] grand jury indictment gives rise to a presumption that probable cause exists"; however, "the presumption may be rebutted by evidence of various wrongful acts on the part of police"); *Martinetti v. Town of New Hartford*, 12 F.App'x 29, 33 (2d Cir. 2001) ("An  arrest warrant procured by fraud, perjury or the misrepresentation or falsification of evidence can overcome the presumption of probable cause."). According to plaintiff, law enforcement officers provided false statements "in order to falsely charge plaintiff with Tampering with Physical Evidence to block, delay or seize plaintiff's access and or ability to post bail on First Degree Gang Assault Charges."  He further avers that the law enforcement defendants, in combination with Attorney Young and Catherine Maloney, conspired to prevent his release.  There is no evidentiary support for a finding that any defendant engaged in misconduct or conspired to do so in connection with the Tampering charges.

Claims Five to Eight may also be construed to allege a violation of plaintiff's Fourth Amendment protection against unreasonably prolonged detention.  To prevail on a claim for unreasonably prolonged detention, a plaintiff must establish "(1) that he had a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'"  *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  There is no evidence of conscience-shocking officer misconduct in connection with the Tampering charge.  In addition, the record demonstrates that plaintiff's continued custody until February 17, 2011 stemmed not from any officer misconduct but rather from his inability to post the $10,000/$20,000 bail on the Gang Assault charges.

The claims against Attorney Young and Catherine Maloney are discussed below. Having read plaintiff's papers most liberally and interpreted them to raise the strongest arguments that they suggest, the Court finds no viable federal claim against any defendant in Claims Five through Eight.

## CLAIMS AGAINST ATTORNEY YOUNG

Mark Young, Esq. was assigned to defend plaintiff in all three criminal proceedings. Plaintiff's principal complaint against Attorney Young is that he waived plaintiff's preliminary hearing on the Tampering charge. Plaintiff avers that when he was brought before Binghamton City Court on that charge, he requested a preliminary hearing, which was scheduled by a Binghamton City Court Judge for January 25, 2011. Attorney Young was appointed to represent plaintiff on January 25, 2011, and waived the preliminary hearing. Plaintiff avers that the waiver was given against his wishes and resulted from Attorney Young's conspiracy with law enforcement officials to deprive plaintiff of various constitutional rights. Plaintiff continues: "By Defendant Young neglecting to get Plaintiff's consent before taking the wrongful liberty of cancelling the Plaintiffs scheduled preliminary hearing, Defendant Young caused the Plaintiff to be detained against his will on two (2) separate felony bail charges from January 25, 2011 until February 17, 2011[.]" Reading plaintiff's papers liberally and interpreting them to raise the strongest arguments they suggest, the Court finds that plaintiff pleads a section 1983 claim against Attorney Young for denial of plaintiff's Sixth Amendment right to counsel and claims under sections 1983 and 1985 for conspiring to subject him to unreasonable detention.

"It is well established that private attorneys – even if the attorney was court appointed – are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir.

-28-

2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir.1997)). Moreover, in this civil action, plaintiff cannot invoke the protection of the Sixth Amendment guarantee of effective representation, which by its terms applies only to criminal prosecutions.

Plaintiff contends that Attorney Young is liable under section 1983 because he conspired with state actors to deprive plaintiff of his constitutional rights. *See Ciambriello*, 292 F.3d at 324. When questioned at his deposition regarding his conspiracy theory, plaintiff testified:

> Q. What – my question for you, Mr. Heyliger, is what – what is your source of proof that Mr. Young conspired with the other individuals you identify in these paragraphs to keep you – do whatever necessary to cause your pre-trail detention?
>
> A. Well, this is the thing: ... when I bailed out of jail, I came to see him a few times at his office to talk about the case, and I asked him about the situation. I said, "Did you cancel my preliminary hearing for this charge?" And he denied it, that he didn't do it, so I'm trying to figure out how did it get canceled, who canceled it, and to this day, it's a mystery on who canceled the preliminary hearing.
>
> ***
>
> ... [M]y only matter that I have with Mr. Young is that if [he] intentionally did that without my consent, [he was] were in violation, and [he] helped these people in a situation where they were trying to convict me, and [he] should have been helping me[.]

In his opposition (Dkt. No. 249) to Attorney Young's summary judgment motion, plaintiff explains at length the manner in which he believes Attorney Young should have conducted his defense. Plaintiff conjectures that, because Attorney Young did not handle the Tampering charge as plaintiff believed it should have been handled, Attorney Young "is liable for assisting prosecutors and law enforcement officials of Broome County in their goal of unlawfully depriving the Plaintiff of his liberty." Plaintiff also complains that Attorney Young "intentionally failed to make timely legal visits to plaintiff"; delayed in scheduling a bail hearing on the gang assault charge; and "acquired prior information from the DA's Office that they did not want the Plaintiff

to be given a bail on the Gang Assault indictment." In support of his summary judgment motion, Attorney Young sets forth the strategy underlying his actions. It is not necessary, however, to evaluate the reasons for Attorney Young's actions; even assuming, solely for purposes of this motion, that some act or omission by Attorney Young inured to the benefit of the prosecution, this fact would not, without more, support an inference of a conspiracy.

Viewing the facts most favorably to plaintiff in light of his status as a *pro se* non-movant, the Court concludes that no reasonable jury could find on this record that Attorney Young entered into a conspiracy with any state actor. Any such finding would be based entirely on impermissible speculation. For the same reasons, no reasonable jury could find in plaintiff's favor on his claim against Attorney Young for conspiracy to interfere with his civil rights under section 1985. The Court finds no viable federal cause of action against Attorney Young.

## CLAIMS AGAINST CATHERINE MALONEY, CITY COURT CLERK

It is undisputed that, as a Chief Clerk of City of Binghamton City Court, Catherine Maloney (sued as Cathern Maloni) is a New York State employee. To the extent that plaintiff sues her in her official capacity for retrospective relief, his claim is barred by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). There is no claim here for prospective relief against New York State. *See generally Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Any claim against Catherine Maloney in her official capacity is dismissed.

The Eleventh Amendment does not bar suits against government employees in their individual capacities. *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999). Personal involvement is an essential element of a section 1983 claim against a state actor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, to recover against a government official, a

plaintiff must show that the official, "through the official's own individual actions, has violated the Constitution." *Id.* A government employee may not be held liable for the unconstitutional conduct of subordinates under a theory of *respondeat superior. See id.* A government employee who occupies a supervisory position may, however, be found personally involved in the deprivation of a plaintiff's constitutional rights if he or she directly participated in the infraction; failed to remedy the wrong after learning of it; created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; was grossly negligent in managing subordinates who caused the unlawful condition or event; or failed to act on information indicating that unconstitutional practices are taking place. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Plaintiff's allegations against Catherine Maloney, no matter how liberally read, fail to state any factual basis to find that she was personally involved in any denial of plaintiff's constitutional rights. The second amended complaint alleges:

> Cathern Maloni was clerk responsible for processing City Court documents for Binghamton City Court and oversaw orders to producing local incarcerated defendants before the Court for arraignment during the time period ranging from November 23, 2010 through February 15, 2011. Maloni was responsible for ensuring Plaintiff's submitted letters to the court requesting to be produced in regard to a filed arrest warrant was granted in an appropriate time fashion. Maloni is responsible for deliberately refusing to process legal documents and denying Plaintiff accesss to be produced before the court to be arraigned effectively depriving Plaintiff due process of law, equal protection, cruel and unusual punishment, and fair bail.

Plaintiff alleges that Catherine Maloney conspired with several other defendants "to seize or delay plaintiff's ability and access to fair bail, by placing an arrest warrant for a charge of tampering with physical evidence in the warrant database." Plaintiff further alleges that, after he became aware of the Tampering charge, he wrote letters to Catherine Maloney "requesting to be produced

before Binghamton City Court" so that he could be arraigned on the Tampering arrest warrant, but he never received a response to his letters.

The record contains a letter from plaintiff, dated December 23, 2010, addressed to Robert C. Murphy, Esq., his attorney on two traffic violations, and copied to "Judge Seiden/Court Clerk." The letter specifies that it is written in reference to plaintiff's traffic violations. The file also contains a letter to plaintiff from the Binghamton City Court dated December 29, 2010, apparently in response to the court's receipt of a copy of plaintiff's December 23, 2010 letter. The December 29, 2010 City Court letter acknowledged receipt of plaintiff's correspondence addressed to the Presiding Judge, and continued: "The case is presently pending before the Court and the Court is not permitted to review or consider ex parte communications. We are, therefore, returning said correspondence to you. A copy of your letter will be forwarded to your attorney of record, Robert C. Murphy, Esq." The file also contains a letter from plaintiff dated January 12, 2011, addressed "To whom it may concern," stating: "I Derek A. Heyliger ... am writing the Binghamton City Court for the 3rd time in attempt to seek final resolution to a City of Binghamton Bench Warrant dated for 10/21/10 and a Binghamton Arrest Warrant dated for 11/23/10."

Plaintiff explains that eventually Attorney Murphy, who had been representing him on the traffic charges, ascertained that the arrest warrant was based on the Tampering charge. Plaintiff testified in his deposition:

> A. ... [S]o I'm saying that Catherine Maloni [*sic*] deliberately ignored my requests to be brought before the courts in pertainance to this [Tampering] charge.
> Q. I understand you're saying that. Do you have any proof of that?
> A. My proof is basically that she had access – she's the person that does all of the booking for the courts for any type of warrants or any type of things that you have to be brought in for the court for arraignment on. Okay. I also wrote her, and I requested ... to be processed on it.

I never got any reply back. I never got to court, so as a result, it's obvious based on the circumstantial evidence that she ignored it.

***

Q.    Do you have any evidence that it got to her, that she ignored it?

A.    I don't have evidence ... that it got to her and that she ignored it. But I have evidence based on the fact that I mailed the letter out. She – I didn't get no replies. Okay  We could – we could do this all day. You got – all is what you can prove the circumstantial evidence is what it is.  Okay.

***

Q.    Do you have any belief or knowledge of why she would do such a thing?

A.    Because first and foremost, they all work together. Okay. All of these officers, they work  all together.  She's – she works for the court, the officers, the detectives, okay, Woody. They have influence.  These people have influence. ...  It's obvious that Charles Woody, Hawley, and them did not want to charge me initially with this charge, that they wanted to hold this charge, because they would have charged me on it on September 12th when the incident took place. So it's obvious right there based on those circumstances that they wanted me to stay in jail on this charge to hold my bail.

***

Q.    Do you know of or have any evidence of any communication between any Binghamton police officer and Catherine Maloni about your bail?

A.    No,  I just know that they all work in the same building.

Plaintiff's section 1983 claim against Catherine Maloney is based on pure conjecture. There is no evidence that Catherine Maloney herself ever saw any letters from plaintiff, much less that she deliberately refused to process them.  There is no basis to find personal involvement on Catherine Maloney's part, either for her own actions or based on supervisory liability.  Further, there is nothing but conjecture to support plaintiff's claim that Catherine Maloney conspired with any police officer or other defendant to deprive plaintiff of his rights.  No reasonable jury could find in plaintiff's favor on this claim without engaging in improper speculation.  The Court finds no viable federal cause of action against Catherine Maloney. All section 1983 claims against Catherine Maloney and any claims against any other defendant based on those claims are

dismissed.

## NINTH AMENDMENT

Plaintiff alleges a violation of his right to privacy under the Ninth Amendment.  The Ninth Amendment, however, "is a rule of construction that does not give rise to individual rights." *Zorn v. Premiere Homes, Inc*., 109 F.App'x 475 (2d Cir. 2004) (citing *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir.1983)).  Thus, it does not provide a basis for a cause of action.

## EQUAL PROTECTION, SECTION 1981

Throughout the second amended complaint, plaintiff asserts claims that defendants infringed his rights to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1981, based on his arrest record and criminal history and his race.  For example, plaintiff claims that he was subjected to "racially related gang profiling"; that he was subjected to "Class-Based Discriminatory Animus" under 42 U.S.C. § 1981; and that law enforcement officers and the media defendants acted "maliciously with discriminatory animus based on Plaintiff's prior criminal record and arrest history to treat Plaintiff differently based on Plaintiff's criminal record or arrest history."

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000).  The *Brown* court explains:

> There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause. A plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Or, a plaintiff could identify a facially neutral law or policy that has been applied in an

-34-

> intentionally discriminatory manner. A plaintiff could also allege that a
> facially neutral statute or policy has an adverse effect and that it was
> motivated by discriminatory animus.
> ***
> When pleading a violation of the Equal Protection Clause, it is sometimes
> necessary to allege the existence of a similarly situated group that was
> treated differently. For example, if a plaintiff seeks to prove selective
> prosecution on the basis of his race, he must show that similarly situated
> individuals of a different race were not prosecuted.

*Id.* (citations and quotation marks omitted).

A plaintiff may also pursue a "class of one" equal protection claim, that is, a claim that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal quotation marks omitted). The plaintiff must identify at least one comparator with whom he shares "an extremely high degree of similarity" sufficient to "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted).

Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

To make out a claim under § 1981, a plaintiff must establish the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the

-35-

statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian*, 7 F.3d at 1088.

As stated above, probable cause for plaintiff's Gang Assault arrest was provided by Hurbertt's statement identifying plaintiff as a member of the Bloods gang and as one of the men who assaulted him on September 12, 2010. There is no evidence that in arresting and charging plaintiff, defendants intentionally discriminated against him on the basis of his race or that they acted with any purpose other than to apprehend the perpetrators of the beating inflicted on Hurbertt. In addition, plaintiff's own testimony shows that there was probable cause for pursuing the Tampering charge. There is no evidence of any policy that expressly classifies persons on the basis of race; that has been applied in an intentionally discriminatory manner; or that has an adverse effect on any racial group. Nor is there evidence that law enforcement officers or any other defendant acted with discriminatory intent; that their conduct produced a disparate impact on a minority group; or that they treated other similarly-situated non-minority people differently. Plaintiff makes no showing of any comparator with whom he shares "an extremely high degree of similarity" so as to support a class-of-one equal protection claim. Based on the undisputed facts, viewing the disputed facts most favorably to plaintiff, and resolving all ambiguities and drawing all factual inferences in favor of plaintiff, the Court holds that no reasonable jury could conclude that any defendant deprived plaintiff of his rights under the Equal Protection Clause or section 1981.

## CONSPIRACY – SECTIONS 1983, 1985, and 1986

Throughout the second amended complaint, plaintiff asserts section 1983 claims for conspiracy to violate his constitutional rights and conspiracy claims under 42 U.S.C. §§ 1985(3)

-36-

and 1986.  The Court has addressed many such claims above.  To prove a conspiracy under section 1983, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn*, 200 F.3d at 72.  The four elements of a claim under section 1985(3) are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *United Bhd. of Carpenters*, 463 U.S. at 828-29.  In addition, a section 1985 conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. at 829.; *accord Mian*, 7 F.3d at 1087-88.  A section 1985(3) plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotation marks omitted).  Section 1986 provides: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]"

The Court finds no factual basis supporting an agreement or meeting of the minds on the part of any defendants to deprive plaintiff of any right or to subject him to any wrong.  There is no basis in the record for a conspiracy claim under sections 1983, 1985, or any other federal law.

Moreover, there can be no liability under section 1986, because there is no wrong under section 1985.

## *MONELL*; SUPERVISORY LIABILITY

Plaintiff asserts liability on the part of the City of Binghamton and Broome County.[7] Under of *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), a municipality can be held liable under section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. *See Jones v. East Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012). "Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). The Court has found that plaintiff cannot establish a violation of his constitutional rights by any individual defendant; accordingly, on this record, there is no basis for *Monell* liability on the part of the City or County.

Plaintiff also asserts claims for supervisory liability. Supervisory liability may arise if a defendant participated directly in the alleged constitutional violation, failed to remedy a wrong after learning of it, created a policy or custom that led to the wrong, was grossly negligent in supervising subordinates, or exhibited deliberate indifference to an unconstitutional act. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Here, because there is no constitutional violation, there can be no supervisory liability. All such claims are dismissed.

## CONCLUSION

---

[7] The City of Binghamton Police Department is a department of the City of Binghamton and therefore is not a suable entity. It is not a proper defendant. All claims against the Police Department are dismissed on this ground.

The Court has thoroughly reviewed the record and has considered every paragraph of the second amended complaint and every submission by the parties. It has read plaintiff's papers most liberally and interpreted them to raise the strongest arguments they suggest. Based on the undisputed facts, viewing the disputed facts most favorably to plaintiff, and resolving all ambiguities and drawing all factual inferences in favor of plaintiff, the Court concludes that plaintiff fails to raise any genuine issue for trial on any federal constitutional or statutory claim. Thus, no reasonable jury could find in plaintiff's favor on any such claim. For the reasons set forth above, the Court grants summary judgment dismissing with prejudice all federal constitutional and statutory claims against all defendants.

Having granted summary judgment dismissing all federal claims, the Court considers whether to continue to assert jurisdiction over the supplemental state law claims. *See* 28 U.S.C. § 1367(c)(3). In exercising its discretion, the Court balances the values of judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because this is the usual case in which all federal law claims are eliminated before trial, the balance of factors points towards declining to exercise jurisdiction over the remaining state-law claims. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). In particular, in the interests of fairness and comity, the Court declines to engage in needless decisions of state law. Therefore, all state law claims are dismissed without prejudice.

It is therefore

ORDERED that the motions for summary judgment (Dkt. Nos. 215, 219, 227, 230, 232, 234, 235, and 237) are granted; and it is further

-39-

ORDERED that all claims in the second amended complaint under the United States Constitution and federal statutory laws are dismissed with prejudice; and it is further

ORDERED that all New York State law claims in the second amended complaint are dismissed without prejudice; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment accordingly; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED

Date:  March 11, 2016
          Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge